**IN THE FEDERAL DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BELWITH PRODUCTS, LLC,                )
                                       )
                                       )
                    Plaintiff,         )
      v.                               )          Case No.:1:26-cv-1400
                                       )
                                       )          Honorable:
MENARD, INC.                           )
                                       )          **Plaintiff Demands Trial By Jury**
                                       )
                                       )
                    Defendant.         )

**OTHER PENDING ACTIONS**

This case is related to the complaint filed in this Court with the
same parties and assigned to District Judge Paul L. Maloney as
Case No. 1:22-cv-335.  That action remains pending.

**COMPLAINT**

Plaintiff, Belwith Products, LLC ("Belwith"), by its attorneys Miller, Canfield, Paddock

and Stone PLC, for its Complaint against Defendant, Menard, Inc. ("Menards"), states:

**NATURE OF THE ACTION**

1.      This lawsuit arises out of Menards' egregious unfair competition, blatant

infringement, and copying of Belwith's intellectual property related to Belwith's highly

successful cabinetry hardware.

2.      Recognizing the success and goodwill that Belwith has built over 130 years as a

supplier of top quality and design for cabinetry hardware, and in a brazen and improper attempt

to capitalize on that success, Menards started selling copycat products of inferior quality. But it

also went a step further, commingling its lookalike products in drawers with Belwith's genuine

1

products and including its lookalike products within the same website pages as Belwith's genuine products.

3.    Menards' conduct is causing, and unless enjoined, will continue to cause, irreparable harm to Belwith. Menards should not be permitted to continue to exploit Belwith's original artistic work, trademarks, and patents to sell its look-alike products to the public. Menards conduct must be stopped and Belwith must be compensated for Menards' unfair competition and willful acts of trademark and patent infringement.

## PARTIES AND JURISDICTION

4.    Plaintiff, Belwith, is a limited liability company having its principal place of business in Grandville, Michigan.  Belwith has two members: (1) John D. Veleris and (2) the John D. Veleris Family Gift Trust.  John D. Veleris is a citizen of Michigan.  The trustees of the John D. Veleris Family Gift Trust are Vanessa Veleris and Dimitri B. Veleris.  Vanessa Veleris is a citizen of Michigan and Dmitri Veleris is a citizen of Colorado.  For purposes of diversity jurisdiction, Belwith is a citizen of both Michigan and Colorado.

5.    Defendant, Menards, is a Wisconsin corporation having its principal place of business in Eau Claire, Wisconsin. Menards is a large-scale retailer of home improvement and other products, and has store locations throughout Michigan, including throughout West Michigan and Kent County.  Menards is a citizen of Wisconsin.

6.    Belwith's claims arise under the patent and trademark laws of the United States, 35 U.S.C. §§ 1 *et seq*, and 15 U.S.C. §§ 1051 *et seq.* Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331,1338(a), and 1367. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C § 1367, which are integrally interrelated to Plaintiff's federal claims, arise from a common nucleus of operative facts, and determination of the state claims with the

federal claims furthers judicial economy.  This Court also has diversity jurisdiction over this matter under 28 U.S.C. § 1332 as Belwith is a citizen of Michigan and Menards is a citizen of Wisconsin.  Further, the amount in controversy exceeds $75,000.

7.    Venue is proper in this Court as Belwith's principal place of business is located within the Western District of Michigan and Menards operates retail stores throughout the Western District of Michigan.  Venue is also proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), 1391 and 1400(b) because Menards has committed acts of infringement in this judicial district where the infringing products can be found in Menards stores.  Further, many of the facts giving rise to this lawsuit occurred within the Western District of Michigan.

**RELEVANT FACTUAL BACKGROUND GIVING RISE TO PENDING LITIGATION BETWEEN THE PARTIES IN THIS COURT**

8.    Belwith is in the business of selling decorative hardware to retailers such as Menards for resale. Belwith also provides core retailers with custom-made, high-end display cabinets for purposes of marketing its decorative hardware.

9.    The display cabinets remain the sole property of Belwith.

10.    For approximately 20 years from 2001 to 2021, Belwith was the exclusive decorative hardware supplier to Menards.

11.    During that period, Belwith sold its decorative hardware to 335 Menards stores, including Menards' Michigan locations, and provided those stores with Belwith's high-end display cabinets exclusively for purposes of displaying and selling Belwith-branded and trademarked products.

12.    From April 2010 through the Summer of 2021, the contractual relationship between Belwith and Menards was governed by contracts known as Vendor Compliance

Program Letters (the "VCPLs") dated October 5, 2010 and April 28, 2016.  (Exhibits 1 and 2 respectively.)

13.    The VCPLs were renewed during the period from 2010 to 2021.

14.    In early 2020, Belwith and Menards were in negotiations to extend certain VCPLs.  When those negotiations broke down, Menards, for the first time, asserted that it owned the display cabinets.

15.    Menards persisted in that demonstrably false claim and refused to return these cabinets to Belwith, which are worth in excess of $1.5 million.

16.    Moreover, beginning in at least 2020, in contravention of the 2016 VCPL, Menards converted the Belwith display cabinets to its own use.

17.    As of April 7, 2022, Menards was still employing Belwith's display cabinets in its Holland and Wyoming, Michigan stores, respectively, for its own use:

 

**Belwith's cabinets in use at Menards Holland, MI store on April 7, 2022**

4



**Belwith's cabinets in use at Menards Wyoming, MI store on April 7, 2022**

## THE PENDING LITIGATION BETWEEN THE PARTIES IN THIS COURT

18.     On April 7, 2022, Belwith sued Menards in this Court, filing a Complaint with four separate breach of contract counts, a breach of implied contract count, and two conversion counts. *Belwith Products, LLC v. Menard, Inc.*, 1:22-cv-335 (W.D. Mich. 2022) ("*Menards I*"), at Dkt No. 1. This case remains pending before the Court. *See Belwith Products, LLC v. Menard, Inc.*, 1:22-cv-335 (W.D. Mich. 2022) ("*Menards I*"). *See id.*

19.     In a recent Opinion and Order on the parties' motions for summary judgment, the Court granted Menard's motion to dismiss Belwith's conversion counts, denied Menard's partial motion for summary judgment, and granted in part and denied in part Belwith's motion for summary judgment. *Id.* at Dkt. 128.

20.     In that Opinion, the Court found that Belwith and Menard's relationship under the VCPLs ended on March 31, 2021 (the "VCPL Termination Date"). *Id.*

50744903.2/155630.00008

## FACTUAL BACKGROUND GIVING RISE TO THIS
## INTELLECTUAL PROPERTY ACTION

***After converting Belwith's display cabinets, Menards sold non-Belwith products from the cabinets before the end of the VCPLs without authorization.***

21.    Menards campaign of improper use and conversion of Belwith's display cabinets did not stop at the conduct alleged in *Menards I*.  Before the VCPL Termination Date, Menards sold non-Belwith products out of Belwith's display cabinets without authorization.

22.    As is evident from the 2016 VCPL, the agreement does not permit sales of non-Belwith products from Belwith's display cabinets:

> **Exclusivity**   Menard Inc. will recognize Belwith Products LLC as the sole supplier of cabinet hardware from April 1st, 2016 through March 31st, 2021, and will utilize the displays supplied by Belwith Products, LLC exclusively for Belwith Products.

(Exhibit 2 at p. 2.)

23.    Upon information and belief, Menards sold numerous non-Belwith cabinet pulls (e.g., SKU# 4880308) from the Belwith display cabinets in hundreds of its stores in 2021 and up until the VCPL Termination Date.

24.     Upon information and belief, Menards sold numerous non-Belwith cabinet knobs (e.g., SKU# 4880730) from the Belwith display cabinets in hundreds of its stores in 2021 and up until the VCPL Termination Date.

25.    The 2016 VCP further provides:

> **Good Deals or Shoot Outs**: Menards reserves the rights to purchase good deal or shoot out cabinet hardware buys only after offering first right of refusal to Belwith on a similar item at the same price or less.  The "Branding" of the product will be mutually agreed upon between Belwith Products LLC and Menards.

(*Id.*)

6

50744903.2/155630.00008

26.     Beginning in 2020 and up until the VCPL Termination Date, Menards did not offer Belwith a first right of refusal to supply the cabinet pull and knob items it sourced and sold as non-Belwith products during this period.

27.     Beginning in 2020 and up until the VCPL Termination Date, Menards did not propose or otherwise work with Belwith on the branding of the non-Belwith cabinet pulls and knob products it sold during this period.

***After the parties' relationship under the VCPLs ended, Menards sold and continues to sell Hickory Hardware®-branded products online and in its stores without authorization.***

28.     From 2010 up until early 2020, Menards exclusively sold Belwith-branded and trademarked products from the Belwith display cabinets under the terms of the VCPLs.

29.     Upon information and belief, the Belwith display cabinets were affixed from 2010 until at least March 31, 2021 with prominent signage containing Belwith branding, including HICKORY HARDWARE®, as shown below from a Menards store visit on June 30, 2021:



30.     After termination of the VCPLs on March 31, 2021, Menards, without authorization from Belwith, quickly pivoted to selling its inventory of Hickory Hardware®-branded cabinet pulls and knobs online and from Belwith's display cabinets.  Menards continued to sell its inventory of Hickory Hardware®-branded products through the date of this Complaint.

31.     On September 25, 2025, Menards sold or offered for sale Hickory Hardware®-branded cabinet pulls (SKU#s P539-WOA, P539-SPA, P3051-BM, P3221-SN, P3113-OBH) and knobs (SKU# PA1214) out of Belwith's display cabinets in its Wyoming, Michigan store.

32.     On November 3, 2025, Menards offered for sale Hickory Hardware®-branded cabinet hardware online, including: two backplate products (SKU# 2232969 and 2232970); six hinge products (e.g., SKU# 4880429 and 4880435); 20 knob products (e.g., SKU# 4881075 and 4883146); and 52 pull products (e.g., SKU# 4883228 and 2247092).

33.     Upon information and belief, after the VCPL Termination Date and before the filing of this Complaint, Menards removed the Hickory Hardware® brand signage from some of Belwith's display cabinets in its stores and retained the Hickory Hardware® signage on others.

34.     Belwith Products, LLC has a United States trademark in HICKORY HARDWARE for [goods], U.S. Trademark Registration No. 3529212, as registered at the U.S. Patent and Trademark Office on November 4, 2008 with an active status as of the date of this Complaint.

35.     Menards only had a license to sell Belwith's Hickory Hardware®-branded cabinet hardware under the VCPLs through March 31, 2021, as set forth in the 2016 VCPL:

> **Exclusivity**   Menard Inc. will recognize Belwith Products LLC as the sole supplier of cabinet hardware from April 1st, 2016 through March 31st, 2021, and will utilize the displays supplied by Belwith Products, LLC exclusively for Belwith Products.
>
> **Brand Commitment:**  Menards will be investing an extraordinary amount of revenue, time and effort building your brand awareness in the Midwest market.  This will position Menards as the driving force in distribution of your brand in our trading areas.  As part of this agreement, and subject only to the termination provisions contained herein and because of the money, time and effort spent by Menards, Belwith Products LLC agrees not to cease selling Menards the Hickory Hardware branded products for the term of the Agreement.

8

(Exhibit 2 at pp. 2, 7.)

36.     The VCPLs do not state that Belwith's license for Menards to sell Belwith's Hickory Hardware® trademarked products survived termination of the VCPLs.  (*See* Exhibit 2.)

37.     The VCPLs do not include any authorization for Menards to liquidate its inventory of Hickory Hardware®-branded products after the VCPL Termination Date, particularly without Hickory Hardware® branding on the display cabinets and the Menards marketing expenditures for the Hickory Hardware® brand set forth in the VCPLs.  (*See id.*)

***After the parties' relationship under the VCPLs ended, Menards also sold and continues to sell its unbranded and branded cabinet hardware in Belwith's Hickory Hardware®-branded display cabinets without authorization causing a likelihood of confusion among consumers***

38.     After the VCPL Termination Date and ten years of exclusively marketing Hickory Hardware® branded products in Belwith's Hickory Hardware®-branded display cabinets, Menards removed the Hickory Hardware® brand signage from some of the Belwith display cabinets in its stores; retained the Hickory Hardware® signage on some or all of the remaining Belwith display cabinets; and failed to install signage or branding on or in proximity to the Belwith display cabinets now housing its Mastercraft®-branded cabinet pulls and knobs.

39.     After the VCPL Termination Date, Menards, without authorization from Belwith, pivoted to selling unbranded and Mastercraft-branded cabinet hardware in Belwith's display cabinets, some of which are knock-offs of certain Hickory Hardware®-branded cabinet hardware products.  Menards has continued to sell these unbranded and Mastercraft®-branded products in Belwith's display cabinets through the date of this Complaint.

40.     All, or nearly all, of the drawers of the Belwith display cabinets Menards has used to market and sell its unbranded and Mastercraft®-branded cabinet pulls and knobs after the VCPL Termination Date are affixed with an exemplar of the product contained in the drawer, a

9

label with a single SKU#, and no indication of the brand or source of the product contained

within the drawer, as shown below:



**Unbranded drawers in Belwith's cabinets at Menards Wyoming, MI store on April 7, 2022**



**Unbranded drawers in Belwith's cabinets at Menards Wyoming, MI store on
September 25, 2025**

41.     In some of the unbranded drawers of the Belwith display cabinets, Menards,

without authorization, has mixed its knock-off unbranded or Mastercraft®-branded cabinet pulls

or knobs with Hickory Hardware®-branded cabinet pulls or knobs of the same type, and

10

marketed these products such that all scan in the cash registers in the Menards stores with the same price and same SKU#.

42.    For example, as shown below, Menards offered for sale Hickory Hardware®-branded "Metropolis" 128mm C/C pulls (labeled with SKU# P3221-SN) and Mastercraft®-branded 128mm C/C pulls (labeled with SKU# 2233154) mixed together in a single drawer labeled with a single SKU# in a Belwith display cabinet.

 



50744903.2/155630.00008

43.     As another example, as shown below, Menards offered for sale Hickory Hardware®-branded "Newport" 3" C/C pulls (labeled with SKU# P539-SPA) and unbranded "Satin Pewter Antique" 3" C/C pulls (labeled with SKU# 2238907) mixed together in a single drawer labeled with a single SKU# 223-8907 in a Belwith display cabinet in its Wyoming, Michigan store on September 25, 2025.  Further, both products scanned with the same SKU# (SKU# 2238907) and price ($4.49), as also shown below.







13

44.    In other unbranded drawers of the Belwith display cabinets with a ten-year history of Hickory Hardware®-branded signage, Menards, without authorization from Belwith, has sold its unbranded or Mastercraft®-branded cabinet pulls or knobs of a given product type alone.

45.    For example, as shown below, Menards offered for sale unbranded "Windover Antique" 3" C/C pulls (labeled with SKU# 4880516) alone in a single drawer labeled with a single SKU# (SKU# 488-0516) in a Belwith display cabinet.



46.    Upon information and belief, Menards' marketing and sales of its unbranded and Mastercraft®-branded cabinet hardware in the Belwith display cabinets alone and mixed with Hickory Hardware®-branded cabinet hardware of the same type, in drawers of the display cabinets is likely to confuse cabinet hardware consumers as to the source of these products.

47.    Upon information and belief, Menards' marketing and sales of its unbranded and Mastercraft®-branded cabinet hardware in the Belwith display cabinets alone and mixed with Hickory Hardware®-branded cabinet hardware of the same type, in drawers of the display

14

cabinets has occurred at every Menards store throughout the country.

*After the parties' relationship under the VCPLs ended, Menards copied Belwith product imagery and reproduced the imagery on its website to sell its knock-off products online*

48.     During and before the VCPLs, Belwith secured intellectual property protection for many of its cabinet hardware designs, including, but not limited to photography of its Hickory Hardware®-branded products in its online product listings and product catalogs.

49.     Belwith retained a photographer to compose, arrange and take one or more original photos of each of 34 of Hickory Hardware®-branded cabinet pulls and knobs (i.e., AUSTERE™, CREST™, MANOR HOUSE™, METROPOLIS™, ROCKFORD™, SKYLIGHT™, SOMERSET™, SOUTHWEST LODGE™, TWIST™, WILLIAMSBURG™, and ZEPHYR™ cabinet pulls and AMERICAN DINER™, CRYSTAL PALACE™, and SKYLIGHT™ cabinet knobs) with lighting, arrangement, product angles and orientations selected by the photographer.  (*See* Exhibits 3A-3P.)

50.     The foregoing photography of the 34 Hickory Hardware®-branded cabinet pulls and knobs was fixed in tangible media including, but not limited to, Belwith's product catalogs and online product listings (collectively, the "Belwith Copyright-Protected Photography").  The creation and first publication dates for the Belwith Copyright-Protected Photography range from March 14, 2005 through March 8, 2023.

51.     Belwith has been assigned all rights to the Belwith Copyright-Protected Photography from the photographer.

52.     Menards had access to the Belwith Copyright-Protected Photography by virtue of its public availability in Belwith's product catalogs and Belwith's online product listings. Further, under the VCPLs, Belwith was required to supply Menards with digital photos for its

50744903.2/155630.00008

cabinet hardware products (*see* Exhibit 2 at pp. 10-18); therefore, Menards had direct access to the Belwith Copyright-Protected Photography under the VCPLs.

53.    After termination of the VCPLs on March 31, 2021, Menards, without authorization, copied the Belwith Copyright-Protected Photography of, at least, 34 Hickory Hardware®-branded cabinet pulls and knobs and reproduced this imagery on its website to market its knock-off cabinet hardware.  The unauthorized cabinet imagery exhibited on Menards website is identical to the Belwith Copyright-Protected Photography, aside from minor differences in resolution, color, lighting, and/or file formats in some instances.  (*See* Exhibits 3A-3P.)

54.    For example, as shown below, Menards copied Belwith's Copyright-Protected Photograph of Belwith's Hickory Hardware® Skylight<sup>TM</sup> cabinet pulls (SKU# HH075327-14) and reproduced the imagery without authorization on its website to sell its knock-off "Mastercraft® Skylight" cabinet pulls (SKU# 4883031).  (*See* Exhibit 3J.)  Moreover, the filename of the imagery of the "Mastercraft® Skylight" cabinet pull is "HH075327-14" on the Menards website, the same filename as the Belwith Hickory Hardware® Skylight<sup>TM</sup> cabinet pull with SKU# HH075327-14.




**Hickory Hardware® Skylight<sup>TM</sup> pull**
**(SKU# HH075327-14)**

**Menards Mastercraft® Skylight pull**
**(SKU# 4883031)**

16

55.     In another example, as shown below, Menards copied Belwith's Copyright-Protected Photography of Belwith's Hickory Hardware® Crest™ cabinet pulls (SKU# HH076129-CH) and reproduced the imagery without authorization on its website to sell its knock-off "Mastercraft® Crest" cabinet pulls (SKU# 4883036).  (*See* Exhibit 3D.)  Moreover, the filename of the imagery of the "Mastercraft® Crest" cabinet pull is "HH076129-CH" on the Menards website, the same filename as the Belwith Hickory Hardware® Crest™ cabinet pull with SKU# HH076129-CH.



**Hickory Hardware® Crest™ pull**
**(SKU# HH076129-CH)**        **Menards Mastercraft® Crest pull**
**(SKU# 4883036)**

56.     In a further example, as shown below, Menards copied Belwith's Copyright-Protected Photography of Belwith's Hickory Hardware® Skylight™ cabinet knobs (SKU# HH075341-14) and reproduced the imagery without authorization on its website to sell its knock-off "Mastercraft® Crest" cabinet knobs (SKU# 4883041).  (*See* Exhibit 3K.)  Moreover, the filename of the imagery of the "Mastercraft® Crest" cabinet pull is "HH075341-14" on the Menards website, the same filename as the Belwith Hickory Hardware® Skylight™ cabinet knob with SKU# HH075341-14.

50744903.2/155630.00008

 

**Hickory Hardware® Skylight<sup>TM</sup> knob
(SKU# HH075341-14)**

**Menards Mastercraft® Skylight knob
(SKU# 4883041)**

*After the parties' relationship under the VCPLs ended, Menards sold and continues to sell knock-off products online using Belwith's trademarks*

57.    Belwith owns the following trademarks: SKYLIGHT$^{TM}$; BRIDGES$^{TM}$; REFINED RUSTIC$^{TM}$; CREST$^{TM}$; EURO-CONTEMPORARY$^{TM}$; OLD MISSION$^{TM}$; STREAMLINE$^{TM}$; and CARBONITE$^{TM}$ (the "Belwith Marks"), and has extensively used each of these marks in commerce to sell its branded cabinet hardware, including cabinet pulls and knobs.  In particular, Belwith has extensively used the Belwith Marks in commerce as follows: the SKYLIGHT$^{TM}$ mark since April 6, 2016; the BRIDGES$^{TM}$ mark since August 9, 2006; the REFINED RUSTIC$^{TM}$ mark since April 21, 2004;  the CREST$^{TM}$ mark since October 9, 2017; the EURO-CONTEMPORARY$^{TM}$ mark since June 2, 2004; the OLD MISSION$^{TM}$ mark since May 19, 1991; the STREAMLINE$^{TM}$ mark since March 14, 2017; and the CARBONITE$^{TM}$ mark since September 27, 2010.

58.    The Belwith Marks are inherently distinctive and also have acquired distinctiveness through substantial sales since 1991, national advertising and acclaim, and advertising.

59.    After termination of the VCPLs on March 31, 2021, Menards, without authorization from Belwith, began selling knock-off Mastercraft®-branded cabinet pulls and knobs online using marks identical to the foregoing Belwith trademarks.  Menards has continued

18

to sell these Mastercraft®-branded knock-off products online using the Belwith Marks without authorization through the date of this Complaint.

60.    On October 1, 2025, Menards offered for sale knock-off "Mastercraft® Skylight" 3" cabinet pulls (SKU# 4883017) online, unfairly competing with Belwith's Hickory Hardware® Skylight™ 3" cabinet pulls (SKU# HH075326-14) also sold online.  (*See* Exhibit 4A.)  Further, as alleged earlier, Menards copied Belwith's Copyright-Protected Photography of Belwith's Hickory Hardware® Skylight™ cabinet pulls and reproduced the imagery without authorization on its website to sell its knock-off "Mastercraft® Skylight" cabinet pulls.  (*See* Exhibit 3J.)

61.    On October 9, 2025, Menards offered for sale "Mastercraft® Bridges" 5-1/16" cabinet pulls (SKU# 4880232) online, unfairly competing with Belwith's Hickory Hardware® Bridges™ 5-1/16" cabinet pulls (SKU# P3233-CBZ) also sold online.  (*See* Exhibit 4B.)

62.    On October 9, 2025, Menards offered for sale "Mastercraft® Refined Rustic" 1-1/4" cabinet knobs (SKU# 4880730) online, unfairly competing with Belwith's Hickory Hardware® Refined Rustic™ 1-1/4" cabinet knobs (SKU# P3002-RI) also sold online on October 10, 2025.  (*See* Exhibit 4C.)

63.    On October 9, 2025, Menards offered for sale "Mastercraft® Crest" 3" cabinet pulls (SKU# 4883036) online, unfairly competing with Belwith's Hickory Hardware® Crest™ 3" cabinet pulls (SKU# H076129-CH) also sold online on November 24, 2025.  (*See* Exhibit 4D.)  Further, as alleged earlier, Menards copied Belwith's Copyright-Protected Photography of Belwith's Hickory Hardware® Crest™ cabinet pulls and reproduced the imagery without authorization on its website to sell its knock-off Mastercraft® Crest cabinet pulls.  (*See* Exhibit 3D.)

64. On October 9, 2025, Menards offered for sale "Mastercraft® Euro-Contemporary" 4" cabinet pulls (SKU# 4880308) online, unfairly competing with Belwith's Hickory Hardware® Euro-Contemporary™ 4" cabinet pulls (SKU# P2164-SS) also sold online on October 10, 2025.  (*See* Exhibit 4E.)

65. On October 9, 2025, Menards offered for sale "Mastercraft® Old Mission" 1-1/2" cabinet pulls (SKU# 2233215) online, unfairly competing with Belwith's Hickory Hardware® Old Mission™ 1-1/2" cabinet pulls (SKU# PA0721-BMA) also sold online on October 10, 2025. (*See* Exhibit 4F.)

66. On October 9, 2025, Menards offered for sale "Mastercraft® Streamline" 5-1/16" cabinet pulls (SKU# 4883065) online, unfairly competing with Belwith's Hickory Hardware® Streamline™ 5-1/16" cabinet pulls (SKU# HH075268-TN) also sold online on October 10, 2025. (*See* Exhibit 4G.)

67. On October 9, 2025, Menards offered for sale "Mastercraft® Carbonite" 1-7/8" cabinet knobs (SKU# 4880236) online, unfairly competing with Belwith's Hickory Hardware® Carbonite™ 1-7/8" cabinet knobs (SKU# P3671-BI) also sold online on October 10, 2025.  *See* Exhibit 4H.  Further, Menards copied Belwith's Copyright-Protected Photography of Belwith's Hickory Hardware® Carbonite™ cabinet pulls and reproduced the imagery without authorization on its website to sell its knock-off Mastercraft® Carbonite cabinet pulls.  (*See* Exhibit 3C.)

68. Upon information and belief, Menards' usage of the Belwith Marks began years after Belwith's first use of these marks in commerce.

69. Upon information and belief, Menards' marketing and sales of its knock-off Mastercraft®-branded cabinet hardware online using the Belwith Marks and copyrighted

20

material without authorization is likely to confuse cabinet hardware consumers as to the source of these products.

***After the parties' relationship under the VCPLs ended, Menards sold and continues to sell knock-off products with designs that are the same as or substantially similar to the designs claimed in Belwith's design patents.***

70.     During and before the VCPLs, Belwith sought and received intellectual property protections for many of its cabinet hardware designs, including, but not limited to, United States Design Patent Nos. D879,584 (the "D'584 patent"), which issued on March 31, 2020; D987,407 (the "D'407 patent"), which issued on May 30, 2023; D629,668 (the "D'668 patent"), which issued on December 28, 2010; D611,797 (the "D'797 patent"), which issued on March 16, 2010; D565,925 (the "D'925 patent"), which issued on April 8, 2008; D600,095 (the "D'095 patent"), which issued on September 15, 2009; and D587,981 (the "D'981 patent"), which issued on March 10, 2009.

71.     Belwith Products, LLC is the owner of each of the foregoing patents by assignment.  Further, each of the foregoing Belwith patents is valid, enforceable, and duly issued in compliance with Title 35 of the United States Code.  True and correct copies of the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents are attached at Exhibits 5A-5G, respectively.

72.     Each of Belwith's Hickory Hardware® Fuse™ cabinet pull (SKU# B076620WN), Maven™ cabinet pull (SKU# H078780SN), Luna™ pull (SKU# P3447), Luna™ cabinet pull (SKU# P3448), Bungalow™ cabinet knob (SKU# P2150, P2151, and P2152), Euro-Contemporary™ cabinet pull (SKU# P2164), and Refined Rustic™ cabinet knob (SKU# P3003) features the designs of the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents, respectively.  Further, each of these products has been marked by Belwith with the respective

21

Belwith patent number on the product and/or on packaging of the product before the filing of this Complaint.

73.    Despite the existence of Belwith's substantial design patent portfolio, Menards began selling knock-off Mastercraft®-branded cabinet hardware in its stores and/or online before and after the VCPL Termination Date with the same or substantially similar designs as those claimed in the foregoing Belwith design patents.

74.    Upon information and belief, Menards sold and/or offered for sale knock-off Mastercraft® 5-1/16" cabinet pulls (SKU# 4881854) in its stores and/or online after the VCPL Termination Date and has continued to sell these cabinet pulls through the date of this Complaint, each of these pulls having the same or substantially the same design as claimed in the D'584 patent.  For example, as shown below, Menards offered this cabinet pull for sale on its website on October 1, 2025, and its design is virtually identical to the design claimed in the D'584 patent.  (*See* Exhibit 6A.)



**Mastercraft® 5-1/16" pull (SKU# 4881854)**                              **D'584**

75.    Upon information and belief, Menards sold and/or offered for sale knock-off Mastercraft® 5" and 3-3/4" cabinet pulls (SKU# 4881696, 4881699, and 4881687) in its stores and/or online after the VCPL Termination Date and has continued to sell these cabinet pulls through the date of this Complaint, each of these pulls having the same or substantially the same design as claimed in the D'407 patent.  For example, as shown below, Menards offered two of

50744903.2/155630.00008

these cabinet pulls for sale on its website on October 2 and 13, 2025, and each of these designs is virtually identical to the design claimed in the D'407 patent.  (*See* Exhibit 6B.)



**Mastercraft® (SKU# 4881696)**          **Mastercraft® (SKU# 4881687)**

**D'407**

76.     Upon information and belief, Menards sold and/or offered for sale knock-off Mastercraft® 3" and 3-3/4" cabinet pulls (SKU# 4883455, 4880573, and 4880567) in its stores before and after the VCPL Termination Date and up until December 28, 2024, each of these pulls having the same or substantially the same design as claimed in the D'668 patent.  For example, as shown below, Menards sold two of these cabinet pulls in one of its stores on November 2 and 18, 2021, and the design of these pulls is virtually identical to the design claimed in the D'668 patent (*see* Exhibit 6C).

    

**Mastercraft® (SKU# 4880573)**          **Mastercraft® (SKU# 4880567)**

23



**D'668**

77.     Upon information and belief, Menards sold and/or offered for sale knock-off Mastercraft® 3" cabinet pulls (SKU# 4880560, 4880556, and 4880690) in its stores before and after the VCPL Termination Date and up until March 16, 2024, each of these pulls having the same or substantially the same design as claimed in the D'797 patent.  For example, as shown below, the design of these pulls is virtually identical to the design claimed in the D'797 patent, as exemplified by Mastercraft® pulls offered for sale by Menards on its website on October 7, 2025.  (*See* Exhibit 6D.)



**Mastercraft® (SKU# 4880556)**



**D'797**

24

78.    Upon information and belief, Menards sold and/or offered for sale knock-off Mastercraft® 3/4", 1-1/16" and 1-3/4" cabinet knobs (SKU# 4880700, 4880642, 4880683, 4881199, 4880697, 4880665, 4880703, and 4880676) in its stores before and after the VCPL Termination Date and up until April 8, 2022, each of these knobs having the same or substantially the same design as claimed in the D'925 patent.  For example, as shown below, the design of these knobs is virtually identical to the design claimed in the D'925 patent, as exemplified by Mastercraft® knobs offered for sale by Menards on its website on October 2, 2025.  (*See* Exhibit 6E.)



**Mastercraft® (SKU# 4880700, 4880642, and 4880683)**



**D'925**

79.    Upon information and belief, Menards sold and/or offered for sale knock-off Mastercraft® 4" cabinet pulls (SKU# 4880308) in its stores before and after the VCPL

25

Termination Date and up until September 15, 2023, each of these pulls having the same or

substantially the same design as claimed in the D'095 patent.  For example, as shown below, the

design of these pulls is virtually identical to the design claimed in the D'095 patent, as

exemplified by Mastercraft® pulls offered for sale by Menards on its website on October 7,

2025.  (*See* Exhibit 6F.)



**Mastercraft® (SKU# 4880308)**                    **D'095**

80.      Upon information and belief, Menards sold and/or offered for sale knock-off

Mastercraft® 1-1/2" cabinet knobs (SKU# 4880730) in its stores before and after the VCPL

Termination Date and up until March 10, 2023, each of these knobs having the same or

substantially the same design as claimed in the D'981 patent.  For example, as shown below, the

design of these knobs is virtually identical to the design claimed in the D'981 patent, as

exemplified by Mastercraft® knobs offered for sale by Menards on its website on October 7,

2025.  (*See* Exhibit 6G.)



**Mastercraft® (SKU# 4880730)**                    **D '981**

50744903.2/155630.00008

**COUNT I: TRADEMARK INFRINGEMENT — Menards' sale of HICKORY HARDWARE®-branded products as a holdover licensee**
**(15 U.S.C § 1114)**

81.     Belwith realleges and incorporates by reference paragraphs 1 through 80 as if fully restated herein.

82.     As a result of Belwith's continuous use and promotion of the trademark HICKORY HARDWARE, consumers associate and recognize the mark as representing a single source or sponsor of goods, and therefore the mark is protectable at common law.

83.     Belwith owns and has active and valid United States trademark rights in the mark HICKORY HARDWARE in association with [goods] (U.S. Trademark Registration No. 3529212), with rights that are superior to any rights that Menards may claim in this mark with respect to Menards' services and products.  Further, Belwith's HICKORY HARDWARE mark is strong and inherently distinctive.

84.     The license that Menards had under the VCPLs to sell Belwith's Hickory Hardware®-branded cabinet hardware required Menards to recognize Belwith as its "sole supplier" of cabinet hardware; and this license terminated upon the VCPL Termination Date.

85.      The VCPLs do not include any provision or indication that Belwith's license for Menards to sell Belwith's Hickory Hardware®-branded cabinet hardware survives the termination of the VCPLs.  Moreover, the VCPLs do not authorize Menards to liquidate any inventory of Hickory Hardware®-branded products after the VCPL Termination Date.

86.     Nevertheless, Menards marketed, offered for sale, and sold Hickory Hardware®-branded cabinet hardware after the VCPL Termination Date online and in Belwith's Display Cabinets without authorization from Belwith, and without any continued indication and

27

marketing of Belwith as its "sole supplier" of cabinet hardware.  Menards has continued to engage in this unlawful conduct up to the date of the filing of this Complaint.

87.    Consequently, Menards' marketing, offering for sale and sales after the VCPL Termination Date of Belwith's Hickory Hardware®-branded cabinet hardware, which are not only confusingly similar to Hickory Hardware® cabinet hardware sold by Belwith, but also branded identically to such product, constitutes an infringement of Belwith's trademark under common law.

88.    Furthermore, because of Menards' unauthorized use of the HICKORY HARDWARE mark in selling off its inventory of Hickory Hardware®-branded cabinet hardware, there is a likelihood of confusion among consumers as to whether Menards' cabinet hardware products and services have been created, approved by, or are otherwise affiliated with Belwith's cabinet hardware products and services.  Consequently, Menards' marketing, offering for sale and sales after the VCPL Termination Date of Belwith's Hickory Hardware®-branded cabinet hardware constitutes infringement of Belwith's mark "HICKORY HARDWARE" under 15 U.S.C. § 1114.

89.    As a result of Menards' unlawful conduct, Belwith has suffered and will continue to suffer damages, as well as the loss of control over the goodwill and reputation it has established through its long and continued use of its trademark "HICKORY HARDWARE" with its cabinet hardware.

90.    The knowing, intentional, and willful nature of Menards' acts renders this an exceptional case under 15 U.S.C. § 1117(a).

91.    As a direct and proximate result of said infringement by Menards, Belwith has sustained, and will continue to sustain damage in an amount to be proven at trial. Belwith is also

28

entitled to Menards' profits attributable to the infringement and is also entitled to its attorney fees and costs.

92.    As a direct and proximate result of the foregoing acts and conduct, Belwith has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law because Belwith's mark is unique and valuable property which has no readily determinable market value; Menards' infringement constitutes harm to Belwith that cannot be made whole by a monetary award; and if Menards' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken or deceived as to the source of the cabinet hardware and services. Further, unless enjoined and restrained by this Court, Menards will continue to infringe Belwith's "HICKORY HARDWARE" mark and damage Belwith through its unauthorized sale of Hickory Hardware®-branded inventory.  Consequently, Belwith is entitled to preliminary and permanent injunctive relief to restrain and enjoin Menards' continuing infringing conduct.

**COUNT II: TRADEMARK INFRINGEMENT—Menards' sale of its unbranded and branded cabinet hardware in HICKORY HARDWARE-branded display cabinets (15 U.S.C § 1114)**

93.    Belwith realleges and incorporates by reference paragraphs 1 through 92 as if fully restated herein.

94.    Under the VCPLs, Menards engaged in about ten years of exclusively marketing Hickory Hardware® branded products in Belwith's Hickory Hardware®-branded display cabinets.  Consequently, consumers rightly developed an expectation that Belwith's display cabinets house Hickory Hardware®-branded product.

29

95.     Yet after the parties' relationship under the VCPLs ended, Menards failed to meaningfully change its marketing of cabinet hardware in its stores, including the signage and labeling of Belwith's display cabinets.

96.     Instead, after the VCPL Termination Date, Menards began selling non-Hickory Hardware® product in drawers of Belwith's display cabinets mixed with or adjacent to Hickory Hardware®-branded product.  Each of these drawers has a single exemplary cabinet pull or knob affixed to it, is labeled with a single SKU#, and has no express indication as to the source of the product (e.g., Hickory Hardware®, Mastercraft®, unbranded/private label, or another brand).

97.     Menards' marketing, offering for sale and sales of its branded and unbranded cabinet hardware in drawers of Belwith's Hickory Hardware®-branded display cabinets after the VCPL Termination Date is likely to confuse consumers as to the source of these goods. Consequently, Menards' commercial conduct in this regard constitutes an infringement of Belwith's trademark under common law.

98.     Furthermore, because of Menards' unauthorized use of the mark "HICKORY HARDWARE" in selling its unbranded and branded cabinet hardware in Belwith's Hickory Hardware®-branded display cabinets, there is a likelihood of confusion among consumers as to whether Menards' cabinet hardware products and services have been created, approved by, or are otherwise affiliated with Belwith's cabinet hardware products and services.  Consequently, Menards' marketing, offering for sale and sales after the VCPL Termination Date of its unbranded and branded cabinet hardware constitutes infringement of Belwith's mark "HICKORY HARDWARE" under 15 U.S.C. § 1114.

99.     As a result of Menards' unlawful conduct, Belwith has suffered and will continue to suffer damages, as well as the loss of control over the goodwill and reputation it has

established through its long and continued use of its trademark "HICKORY HARDWARE" with its cabinet hardware.

100.    The knowing, intentional, and willful nature of Menards' acts renders this an exceptional case under 15 U.S.C. § 1117(a).

101.    As a direct and proximate result of said infringement by Menards, Belwith has sustained, and will continue to sustain damage in an amount to be proven at trial. Belwith is also entitled to Menards' profits attributable to the infringement and is also entitled to its attorney fees and costs.

102.    As a direct and proximate result of the foregoing acts and conduct, Belwith has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law because Belwith's mark is unique and valuable property which has no readily determinable market value; Menards' infringement constitutes harm to Belwith that cannot be made whole by a monetary award; and if Menards' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken or deceived as to the source of the cabinet hardware and services. Further, unless enjoined and restrained by this Court, Menards will continue to infringe Belwith's "HICKORY HARDWARE" mark and damage Belwith through its unauthorized sale of its branded and unbranded cabinet hardware in Belwith's Hickory Hardware®-branded display cabinets.  Consequently, Belwith is entitled to preliminary and permanent injunctive relief to restrain and enjoin Menards' continuing infringing conduct.

**COUNT III: FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN—Menards' sale of knock-off cabinet hardware using Belwith's trademarks (15 U.S.C § 1125)**

103.    Belwith realleges and incorporates by reference paragraphs 1 through 102 as if fully restated herein.

104.    Belwith has common law ownership of all rights in the following trademarks: SKYLIGHT™; BRIDGES™; REFINED RUSTIC™; CREST™; EURO-CONTEMPORARY™; OLD MISSION™; STREAMLINE™; and CARBONITE™.  Further, these trademarks constitute valid, protectable rights, each being inherently distinctive or descriptive with secondary meaning.  Moreover, Belwith stands as the senior user of these trademarks.

105.    After termination of the VCPLs on March 31, 2021, Menards, without authorization from Belwith, began distributing, marketing, offering for sale and selling knock-off Mastercraft®-branded cabinet pulls and knobs online using marks that are confusingly similar to or otherwise identical to the following Belwith trademarks: SKYLIGHT™; BRIDGES™; REFINED RUSTIC™; CREST™; EURO-CONTEMPORARY™; OLD MISSION™; STREAMLINE™; and CARBONITE™, respectively.  Menards has continued to distribute, market, offer to sell, and sell these Mastercraft®-branded knock-off products online through the date of this Complaint.  Such conduct constitutes unfair competition, false designation of origin and/or false description or representations, and wrongfully trades on Belwith's goodwill, passes off Menards' products as those of Beliwth, and limits Belwith's ability to generate revenue through the sale of its own products.

106.    As a result of Menards' unlawful use in commerce of the SKYLIGHT™; BRIDGES™; REFINED RUSTIC™; CREST™; EURO-CONTEMPORARY™; OLD

32

MISSION<sup>TM</sup>; STREAMLINE<sup>TM</sup>; and CARBONITE<sup>TM</sup> marks owned by Belwith in the course of distributing, marketing, offering for sale and selling its knock-off products with the same or confusingly similar marks, consumers are likely to be misled, deceived and confused as to the origin, sponsorship or affiliation of Menards' products.

107. Menards' unauthorized and unlawful conduct has deprived and will continue to deprive Belwith of the ability to control perception of its services by consumers, shifting Belwith's valuable reputation and goodwill to Menards. Menards is unfairly competing with and causing damage to Belwith by engaging in these unlawful acts.

108. Menards' conduct in using the "Skylight", "Bridges", "Refined Rustic", "Crest", "Euro-Contemporary", "Old Mission", "Streamline", and "Carbonite" marks in connection with the distribution, marketing, offering for sale and selling of its knock-off cabinet hardware products is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or affiliation of Menards' products in violation of 15 U.S.C. § 1125(a).

109. Upon information and belief, Menards' unfair competition and passing off has been willful and deliberate, designed specifically to trade upon the consumer goodwill created and enjoyed by Belwith for Menards' profit.

110. Belwith's consumer goodwill associated with these marks is of enormous value, and Belwith is suffering and will continue to suffer irreparable harm if Menards' unfair competition and passing off as to the distribution, marketing, offering for sale and sales of its knock-off cabinet hardware is allowed to continue.

111. Menards' unfair competition and passing off has continued and will likely continue unless enjoined by this Court.

50744903.2/155630.00008

112.    The knowing, intentional, and willful nature of Menards' acts set forth herein renders this an exceptional case under 15 U.S.C § 1117(a).

113.    As a direct and proximate result of Menards' acts, Belwith has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of infringement and unfair competition by Menards harmed Belwith and resulted in substantial unjust profits and unjust enrichment to Menards.

114.    As a direct and proximate result of the foregoing acts and conduct, Belwith has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Menards will continue to engage in these unlawful acts. Belwith is entitled to preliminary and permanent injunctive relief to restrain and enjoin Menards' continuing infringing conduct.

## COUNT IV-A: DESIGN PATENT INFRINGEMENT —
### Menards' infringement of D'584 patent
### (35 U.S.C § 271)

115.    Belwith realleges and incorporates by reference paragraphs 1 through 114 as if fully restated herein.

116.    On March 31, 2020, the United States Patent and Trademark Office duly and legally issued the D'584 patent.

117.    The D'584 patent is directed to a "Cabinet Handle" as shown in FIGS. 1-7.

118.    Belwith is the owner of the D'584 patent by assignment.  Further, Belwith has properly marked products on and after March 22, 2022 that it promptly sold with the D'584 patent under 35 U.S.C. § 287, including its Fuse™ cabinet pulls (SKU# B076620WN).

119.    Menards has used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused cabinet hardware products ("D'584 infringing product"), including, but not limited to, Mastercraft® 5-1/16" cabinet pulls (SKU# 4881854) within the term of the D'584 patent.  The design of Menards' D'584 infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field of the D'584 patent, appears substantially similar to the ornamental design claimed in the D'584 patent. Consequently, Menards' conduct in connection with at least the Mastercraft® 5-1/16" cabinet pulls (SKU# 4881854) constitutes infringement of the D'584 patent under 35 U.S.C. § 271.

120.    Menards has damaged and will continue to damage Belwith in an amount to be determined at trial under at least 35 U.S.C. §§ 284, 289.

121.    Menards has irreparably injured Belwith and such injury will continue unless Menards is enjoined by this Court.

50744903.2/155630.00008

122.    Menards has willfully infringed and continues to willfully infringe the D'584 patent.

123.    Menards' deliberate infringement without any reasonable justification, makes this an exceptional case, entitling Belwith to an award of attorney fees under 35 U.S.C. § 285.

## COUNT IV-B: DESIGN PATENT INFRINGEMENT —
### Menards' infringement of the D'407 patent
### (35 U.S.C § 271)

124.    Belwith realleges and incorporates by reference paragraphs 1 through 123 as if fully restated herein.

125.    On May 3, 2023, the United States Patent and Trademark Office duly and legally issued the D'407 patent.

126.    The D'407 patent is directed to a "Cabinet Handle" as shown in FIGS. 1-7.

127.    Belwith is the owner of the D'407 patent by assignment.  Further, Belwith has properly marked products on and after June 7, 2023 it promptly sold with the D'407 patent under 35 U.S.C. § 287, including its Maven™ cabinet pulls (SKU# H078780SN).

128.    Menards has used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused cabinet hardware products ("D'407 infringing product"), including, but not limited to, Mastercraft® 5" and 3-3/4" cabinet pulls (SKU# 4881696, 4881699, and 4881687) within the term of the D'407 patent.  The design of Menards' D'407 infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field of the D'407 patent, appears substantially similar to the ornamental design claimed in the D'407 patent.  Consequently, Menards' conduct in connection with at least the Mastercraft® 5" and 3-3/4" cabinet pulls (SKU# 4881696, 4881699, and 4881687) constitutes infringement of the D'407 patent under 35 U.S.C. § 271.

36

129.    Menards has damaged and will continue to damage Belwith in an amount to be determined at trial under at least 35 U.S.C. §§ 284, 289.

130.    Menards has irreparably injured Belwith and such injury will continue unless Menards is enjoined by this Court.

131.    Menards has willfully infringed and continues to willfully infringe the D'407 patent.

132.    Menards' deliberate infringement without any reasonable justification, makes this an exceptional case, entitling Belwith to an award of attorney fees under 35 U.S.C. § 285.

### COUNT IV-C: DESIGN PATENT INFRINGEMENT — Menards' infringement of the D'668 patent (35 U.S.C § 271)

133.    Belwith realleges and incorporates by reference paragraphs 1 through 132 as if fully restated herein.

134.    On December 28, 2010, the United States Patent and Trademark Office duly and legally issued the D'668 patent.

135.    The D'668 patent is directed to a "Cabinet Handle" as shown in the FIGS. 1-7.

136.    Belwith is the owner of the D'668 patent by assignment.  Further, Belwith has properly marked products on and after January 3, 2018 it promptly sold with the D'668 patent under 35 U.S.C. § 287, including its Luna$^{TM}$ cabinet pulls (SKU# P3447).

137.    Menards has used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused cabinet hardware products ("D'668 infringing product"), including, but not limited to, Mastercraft® 3" and 3-3/4" cabinet pulls (SKU# 4883455, 4880573, and 4880567) within the term of the D'668 patent.  The design of Menards' D'668 infringing product, in the eye of the ordinary observer who is familiar with the

37

prior art in the field of the D'668 patent, appears substantially similar to the ornamental design claimed in the D'668 patent.  Consequently, Menards' conduct in connection with at least the Mastercraft® 3" and 3-3/4" cabinet pulls (SKU# 4883455, 4880573, and 4880567) constitutes infringement of the D'668 patent under 35 U.S.C. § 271.

138.    Menards has damaged Belwith in an amount to be determined at trial under at least 35 U.S.C. §§ 284, 289.

139.    Menards has irreparably injured Belwith.

140.    Menards has willfully infringed the D'668 patent.

141.    Menards' deliberate infringement without any reasonable justification, makes this an exceptional case, entitling Belwith to an award of attorney fees under 35 U.S.C. § 285.

## COUNT IV-D: DESIGN PATENT INFRINGEMENT —
### Menards' infringement of the D'797 patent
### (35 U.S.C § 271)

142.    Belwith realleges and incorporates by reference paragraphs 1 through 141 as if fully restated herein.

143.    On March 16, 2010, the United States Patent and Trademark Office duly and legally issued the D'797 patent.

144.    The D'797 patent is directed to a "Cabinet Pull" as shown in FIGS. 1-7.

145.    Belwith is the owner of the D'797 patent by assignment.  Further, Belwith has properly marked products on and after January 29, 2018 it promptly sold with the D'797 patent under 35 U.S.C. § 287, including its Luna$^{TM}$ cabinet pulls (SKU# P3448).

146.    Menards has used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused cabinet hardware products ("D'797 infringing product"), including, but not limited to, Mastercraft® 3" cabinet pulls (SKU#

38

4880560, 4880556, and 4880690) within the term of the D'797 patent.  The design of Menards' D'797 infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field of the D'797 patent, appears substantially similar to the ornamental design claimed in the D'797 patent.  Consequently, Menards' conduct in connection with at least the Mastercraft® 3" cabinet pulls (SKU# 4880560, 4880556, and 4880690) constitutes infringement of the D'797 patent under 35 U.S.C. § 271.

147.    Menards has damaged Belwith in an amount to be determined at trial under at least 35 U.S.C. §§ 284, 289.

148.    Menards has irreparably injured Belwith.

149.    Menards has willfully infringed the D'797 patent.

150.    Menards' deliberate infringement without any reasonable justification, makes this an exceptional case, entitling Belwith to an award of attorney fees under 35 U.S.C. § 285.

### COUNT IV-E: DESIGN PATENT INFRINGEMENT —
### Menards' infringement of the D'925 patent
### (35 U.S.C § 271)

151.    Belwith realleges and incorporates by reference paragraphs 1 through 150 as if fully restated herein.

152.    On April 8, 2008, the United States Patent and Trademark Office duly and legally issued the D'925 patent.

153.    The D'925 patent is directed to "Cabinet Handles" as shown in FIGS. 1-12.

154.    Belwith is the owner of the D'925 patent by assignment.  Belwith has properly marked products on and after April 11, 2006, December 11, 2017, and January 3, 2018 it promptly sold with the D'925 patent under 35 U.S.C. § 287, including its Bungalow™ cabinet knobs (SKU# P2150, P2151, and P2152, respectively).

50744903.2/155630.00008

155.    Menards has used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused cabinet hardware products ("D'925 infringing product"), including, but not limited to, Mastercraft® 3/4", 1-1/16" and 1-3/4" cabinet knobs (SKU# 4880700, 4880642, 4880683, 4881199, 4880697, 4880665, 4880703, and 4880676) within the term of the D'925 patent.  The design of Menards' D'925 infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field of the D'925 patent, appears substantially similar to the ornamental design claimed in the D'925 patent. Consequently, Menards' conduct in connection with at least the Mastercraft® 3/4", 1-1/16" and 1-3/4" cabinet knobs (SKU# 4880700, 4880642, 4880683, 4881199, 4880697, 4880665, 4880703, and 4880676) constitutes infringement of the D'925 patent under 35 U.S.C. § 271.

156.    Menards has damaged in an amount to be determined at trial under at least 35 U.S.C. §§ 284, 289.

157.    Menards has irreparably injured Belwith.

158.    Menards has willfully infringed the D'925 patent.

159.    Menards' deliberate infringement without any reasonable justification, makes this an exceptional case, entitling Belwith to an award of attorney fees under 35 U.S.C. § 285.

50744903.2/155630.00008

**COUNT IV-F: DESIGN PATENT INFRINGEMENT —
Menards' infringement of the D'095 patent
(35 U.S.C § 271)**

160.    Belwith realleges and incorporates by reference paragraphs 1 through 159 as if fully restated herein.

161.    On September 15, 2009, the United States Patent and Trademark Office duly and legally issued the D'095 patent.

162.    The D'095 patent is directed to a "Cabinet Handle" as shown in FIGS. 1-8.

163.    Belwith is the owner of the D'095 patent by assignment.  Belwith has properly marked products on and after January 17, 2018 it promptly sold with the D'095 patent under 35 U.S.C. § 287, including its Euro-Contemporary™ cabinet pulls (SKU# P2164).

164.    Menards has used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused cabinet hardware products ("D'095 infringing product"), including, but not limited to, Mastercraft® 4" cabinet pulls (SKU# 4880308) within the term of the D'095 patent.  The design of Menards' D'095 infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field of the D'095 patent, appears substantially similar to the ornamental design claimed in the D'095 patent. Consequently, Menards' conduct in connection with at least the Mastercraft® 4" cabinet pulls (SKU# 4880308) constitutes infringement of the D'095 patent under 35 U.S.C. § 271.

165.    Menards has damaged Belwith in an amount to be determined at trial under at least 35 U.S.C. §§ 284, 289.

166.    Menards has irreparably injured Belwith.

167.    Menards has willfully infringed the D'095 patent.

41

168.    Menards' deliberate infringement without any reasonable justification, makes this an exceptional case, entitling Belwith to an award of attorney fees under 35 U.S.C. § 285.

### COUNT IV-G: DESIGN PATENT INFRINGEMENT —
### Menards' infringement of the D'981 patent
### (35 U.S.C § 271)

169.    Belwith realleges and incorporates by reference paragraphs 1 through 168 as if fully restated herein.

170.    On March 10, 2009, the United States Patent and Trademark Office duly and legally issued the D'981 patent.

171.    The D'981 patent is directed to a "Cabinet Handle" as shown in FIGS. 1-3.

172.    Belwith is the owner of the D'981 patent by assignment.  Belwith has properly marked products on and after October 30, 2020 it promptly sold with the D'981 patent under 35 U.S.C. § 287, including its Refined Rustic$^{TM}$ cabinet knobs (SKU# P3003).

173.    Menards has used, sold, and/or offered for sale within the United States and/or imported into the United States, one or more accused cabinet hardware products ("D'981 infringing product"), including, but not limited to, Mastercraft® 1-1/2" cabinet knobs (SKU# 4880730) within the term of the D'981 patent.  The design of Menards' D'981 infringing product, in the eye of the ordinary observer who is familiar with the prior art in the field of the D'981 patent, appears substantially similar to the ornamental design claimed in the D'981 patent. Consequently, Menards' conduct in connection with at least the Mastercraft® 1-1/2" cabinet knobs (SKU# 4880730) constitutes infringement of the D'981 patent under 35 U.S.C. § 271.

174.    Menards has damaged Belwith in an amount to be determined at trial under at least 35 U.S.C. §§ 284, 289.

175.    Menards has irreparably injured Belwith.

50744903.2/155630.00008

176.    Menards has willfully infringed the D'981 patent.

177.    Menards' deliberate infringement without any reasonable justification, makes this an exceptional case, entitling Belwith to an award of attorney fees under 35 U.S.C. § 285.

## COUNT V: UNFAIR COMPETITION
### (M.C.L. § 445.903 *et seq.*)

178.    Belwith realleges and incorporates by reference paragraphs 1 through 177 as if fully restated herein.

179.    Through its continued unauthorized use of the HICKORY HARDWARE®, SKYLIGHT™; BRIDGES™; REFINED RUSTIC™; CREST™; EURO-CONTEMPORARY™; OLD MISSION™; STREAMLINE™; and CARBONITE™ marks, Menards has engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of Michigan's Consumer Protection Act, M.C.L. § 445.903 *et seq*.

180.    As a result of the foregoing acts, Menards has: (i) caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods (e.g., the foregoing Hickory Hardware®, Mastercraft® and unbranded cabinet hardware Menards sold after the VCPL Termination Date) as prohibited by M.C.L. § 445.903(1)(a); (ii) used deceptive representations or deceptive designations of geographic origin in connection with these goods as prohibited by M.C.L. § 445.903(1)(b); (iii) represented that these goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have as prohibited by M.C.L. § 445.903(1)(c); and/or (iv) represented that these goods

43

are of a particular standard, quality, or grade, or that these goods are of a particular style or model, if they are of another as prohibited by M.C.L. § 445.903(1)(e).

181. Menards' wrongful acts alleged herein have permitted and/or will permit Menards to earn substantial revenues and profits on the strength of Belwith's extensive advertising, consumer recognition, and the goodwill associated with its HICKORY HARDWARE®, SKYLIGHT™; BRIDGES™; REFINED RUSTIC™; CREST™; EURO-CONTEMPORARY™; OLD MISSION™; STREAMINE™; and CARBONITE™ marks, branded-product and services, and packaging.

182. By reason of Menards' wrongful acts alleged herein, Belwith has suffered and is continuing to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Menards' products are affiliated with, sponsored by, approved by, or originate from the Belwith.

183. As a direct and proximate result of Menards' acts, Belwith has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of unfair competition by Menards harmed Belwith and resulted in substantial unjust profits and unjust enrichment to Menards.

184. As a direct and proximate result of the foregoing acts and conduct, Belwith has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this Court, Menards will continue to engage in unfair competition. Belwith is entitled to preliminary and permanent injunctive relief to restrain and enjoin Menards' continuing infringing conduct.

50744903.2/155630.00008

## COUNT VI: UNFAIR COMPETITION UNDER MICHIGAN COMMON LAW

185. Belwith realleges and incorporates by reference paragraphs 1 through 184 as if fully restated herein.

186. By its conduct, Menards has unfairly competed with Belwith and continues to compete unfairly with Belwith. Belwith has no adequate remedy at law for Menards' continuing acts of unfair competition.

187. By reason of Menards' wrongful acts alleged herein, Belwith has suffered and is continuing to suffer damage to its business, trade, reputation, and goodwill as a result of the erroneous perception that Menards' products are affiliated with, sponsored by, approved by, or originate from Belwith.

188. As a direct and proximate result of Menards' acts, Belwith has sustained, and will continue to sustain damages, in an amount to be proven at trial. Upon information and belief, the acts of unfair competition by Menards harmed Belwith and resulted in substantial unjust profits and unjust enrichment to Menards.

189. As a direct and proximate result of the foregoing acts and conduct, Belwith has sustained and will continue to sustain substantial and irreparable injury, for which there is no adequate remedy at law. Unless enjoined and restrained by this court, Menards will continue to engage in unfair competition. Belwith is entitled to preliminary and permanent injunctive relief to restrain and enjoin Menards' continuing infringing conduct.

**COUNT VII: BREACH OF CONTRACT — Menards' sale of non-Belwith cabinet hardware before termination of the VCPLs**

190. Belwith realleges and incorporates by reference paragraphs 1 through 189 as if fully restated herein.

191. The VCPLs are valid and binding agreements between Menards and Belwith.

192. Belwith has fully performed its obligations under the VCPLs.

193. Menards breached the VCPLs when it sold non-Belwith cabinet hardware from the Belwith-supplied display cabinets before the VCPL Termination Date.

194. As a direct and proximate result of Menards' breach of contract, Belwith has suffered damage of at least its lost profits associated with the probable sale of its Hickory Hardware®-branded cabinet hardware instead of the non-authorized, non-Belwith cabinet hardware sold by Menards from the Belwith-supplied cabinets.

**PRAYER FOR RELIEF**

**WHEREFORE,** Belwith respectfully requests that this Court enter an Order granting the following relief:

A1. A determination that Menards is liable to Belwith for trademark infringement under 15 U.S.C. § 1117 and/or common law (Count I).

A2. A determination that Menards is liable to Belwith for trademark infringement under 15 U.S.C. § 1117 and/or common law (Count II).

A3. A determination that Menards is liable to Belwith for federal unfair competition and/or false designation of origin under 15 U.S.C. § 1125 (Count III).

46

A4.    A determination that Menards is liable to Belwith for infringement of the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents under 35 U.S.C. § 271 (Counts IV-A to IV-G).

A5.    A determination that Menards is liable to Belwith for unfair competition under M.C.L. § 445.903 (Count V).

A6.    A determination that Menards is liable to Belwith for unfair competition under Michigan common law (Count VI).

A7.    A determination that Menards is liable for breach of contract (Count VII).

C1.    Enjoining Menards, along with its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with any of the foregoing persons from distributing, marketing, offering for sale, and selling Hickory Hardware®-branded cabinet hardware in its stores and online and Menards' Mastercraft® and unbranded cabinet hardware in Belwith's Display Cabinets under 15 U.S.C. § 1116(a) and common law.

C2.    Awarding Belwith a judgment against Menards under 15 U.S.C. § 1117 for all profits derived by Menards and all damages sustained by Belwith by reason of Menards' unlawful acts complained of herein as to its inventory of Hickory Hardware® products, Mastercraft® cabinet hardware, and unbranded cabinet hardware, and that all such damages be trebled.

C3.    Awarding Belwith a judgment against Menards under 15 U.S.C. § 1117(a) for Belwith's reasonable costs and attorney fees by reason of Menards' unlawful acts complained of herein as to its inventory of Hickory Hardware® products, Mastercraft® cabinet hardware, and unbranded cabinet hardware.

47

D1.    Enjoining Menards under 15 U.S.C. § 1116(a) and common law, along with its officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with any of the foregoing persons from:

(i)    distributing, marketing, offering for sale, and selling cabinet hardware online using Belwith's "Skylight", "Bridges", "Refined Rustic", "Crest", "Euro-Contemporary", "Old Mission", "Streamline", and "Carbonite" marks, or any variant thereof which is a colorable imitation or otherwise likely to be mistaken for or confused with these Belwith marks;

(ii)    otherwise infringing on these Belwith marks or using any other trademarks that are confusingly similar to any of these Belwith marks; and

(iii)    otherwise unfairly competing with Belwith or using any false designations of origin or false description or engaging in any deceptive trade practice, or trading of Belwith's reputation or goodwill, or injuring Belwith's reputation or performing any act which is likely to lead members of the consuming public to believe that any products offered for sale or sold by Menards are in any manner associated or connected with Belwith or are licensed, sponsored, approved or authorized by Belwith.

D2.    Awarding Belwith a judgment against Menards under 15 U.S.C. § 1117 for all profits derived by Menards and all damages sustained by Belwith by reason of Menards' unlawful acts complained of herein in connection with its cabinet hardware that used Belwith's "Skylight", "Bridges", "Refined Rustic", "Crest", "Euro-Contemporary", "Old Mission", "Streamline", and "Carbonite" marks, and that all such damages be trebled.

D3.    Awarding Belwith a judgment against Menards under 15 U.S.C. § 1117(a) for Belwith's reasonable costs and attorney fees by reason of Menards' unlawful acts complained of

48

herein in connection with its cabinet hardware that used Belwith's "Skylight", "Bridges", "Refined Rustic", "Crest", "Euro-Contemporary", "Old Mission", "Streamline", and "Carbonite" marks.

E1.    Enjoining Menards and any person acting in concert with it from further infringement of each of the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents pursuant to 35 U.S.C. § 283.

E2.    Declaring that each of the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents is valid, enforceable, and infringed by Menards.

E3.    Awarding Belwith the profits of Menards, in accordance with 35 U.S.C. § 289, resulting from Menards' infringement of each of the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents, actual damages to Belwith in an amount not less than a reasonable royalty for Menards' infringement, and other damages and relief allowed under 35 U.S.C. § 284 including:

(i)    an Order requiring the removal from the marketplace and destruction of all of Menards' products that infringe the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents;

(ii)    an Order prohibiting Menards from further using, selling, offering for sale in the United States, and importing into the United States all of Menards' products that infringe the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents;

(iii)    an Order requiring an accounting of Menards' profits relating to infringement of the D'584, D'407, D'668, D'797, D'925, D'095, and D'981 patents; and

(iv)    an Order requiring Menards to report to this Court of its compliance with the foregoing within thirty (30) days of judgment.

50744903.2/155630.00008

E4.     Declaring this case exceptional under 35 U.S.C. § 285 and awarding Belwith its reasonable attorneys' fees and costs.

F1.     Awarding Belwith judgment in its favor and against Menards in an amount to be determined at trial, plus costs, interest, attorneys' fees and all other relief the Court deems fair and equitable for unfair competition and/or breach of contract by Menards in accordance with Michigan law and/or common law.

G.     Granting such other relief as the Court deems just and reasonable.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.


By: /s/ Joseph M. Infante
        Joseph M. Infante (P68719)
        Gregory A. Lewis (P75796)
        Anita C. Marinelli (P81986)
        99 Monroe Avenue NW, Suite 1200
        Grand Rapids, MI  49503
        (616) 454-8656
        infante@millercanfield.com

        *Attorneys for Plaintiff*


Dated:  April 29, 2026

50744903.2/155630.00008

## DEMAND FOR JURY TRIAL

Belwith hereby demands a jury trial on all issues.


Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.


By: /s/ Joseph M. Infante

Joseph M. Infante (P68719)
Gregory A. Lewis (P75796)
Anita C. Marinelli (P81986)
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI  49503
(616) 454-8656
infante@millercanfield.com

*Attorneys for Plaintiff*


Dated:  April 29, 2026

50744903.2/155630.00008